## JOHN E. HANKS

*v.*

## LAURA B. RHOADS *et al.*

*Filed at Springfield May 14, 1889.*

1. CROSS-EXAMINATION. Where a witness is asked, on cross-examination, about a matter not testified to by him on his direct examination, the question will be obnoxious to an objection as not being proper cross-examination.

2. CHANCERY—*sufficiency of evidence to support decree.* Where there is sufficient evidence to justify the decree rendered, the decree will not be reversed on the ground the evidence is conflicting and contradictory, especially when the chancellor has heard the witnesses testify, so that he could judge from their appearance on the stand, and when the defendant's evidence differs in theory from the defense made in the answer.

APPEAL from the Circuit Court of Edgar county; the Hon. JAMES F. HUGHES, Judge, presiding.

Mr. H. S. TANNER, for the appellant:

Prior to the September term, 1878, of the Edgar circuit court, appellant had become surety for said W. W. Hanks on a replevin bond in the penal sum of $10,000. This deed, appellees, by their bill, ask to have declared a mortgage to secure appellant as such surety, and to pay any indebtedness of W. W. Hanks to appellant. We think the evidence wholly insufficient to show that the deed was intended as a mortgage. Whether the conveyance amounted to a mortgage depends upon the intention of the parties at the time. *Pitts* v. *Cable*, 44 Ill. 102; *Price* v. *Karnes*, 59 id. 276.

The positive evidence of the warranty deed, absolute upon its face, and the witnesses Michael Hanks, John McCord, Abner Dill, Thomas Slemons, James Cale, Samuel Hybarger and Forrest Hanks, is surely sufficient to overcome any doubt raised by the uncertain and contradictory evidence given for

appellees. To convert the deed in this case into a mortgage, the evidence should show clearly such was the contract and intent of the parties at the time of making the deed. It must have been a mortgage from the beginning. *Sweetland* v. *Sweetland*, 3 Mich. 482.

Not one of appellees' witnesses claims to know anything about the contract between William W. Hanks and appellant when the deed was delivered. Their evidence is confined to conversations with appellant after the whole transaction was concluded. *Pitts* v. *Cable*, 44 Ill. 102; *Price* v. *Karnes*, 59 id. 276; *Remington* v. *Campbell*, 60 id. 516; *Hancock* v. *Harper*, 86 id. 445.

Mr. JAMES A. EADS, and Mr. H. VAN SELLAR, for the appellees.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

This is a bill in chancery, by appellees, against appellant, by which it is sought to have a deed declared a mortgage, and for an accounting, for rents, payment of taxes, etc. The bill alleges that William Hanks, the father of appellees, to secure appellant as surety on a replevin bond executed by William, did, on the 18th day of April, 1879, convey to said appellant, in fee simple, one hundred and sixty acres of land in Edgar county, Illinois; that no liability accrued to said appellant as such surety, and that he suffered no loss thereby, but that he has since refused to reconvey said premises, claiming that said deed was intended by the parties to be absolute. Appellant, by his answer, denies that said conveyance was made merely to indemnify him on account of said suretyship, and he avers, "that said William W. Hanks, at the time of said conveyance, was indebted to defendant between $5000 and $6000, for money at different times before then advanced by defendant to said William W. Hanks; that said William W. Hanks was financially embarrassed, and defendant, at various times, advanced him large sums of money, and that just be-

fore the making of said conveyance, he and said William W. Hanks had an accounting, in which it was shown that defendant had loaned said William W. Hanks considerably more than $5000, without counting any interest, and said William W. Hanks proposed to convey to said defendant said tracts of land in said bill mentioned, in liquidation of his indebtedness." On the hearing, the witnesses were produced, and testified in open court, and a decree was rendered in favor of complainants, declaring the conveyance to be in the nature of a mortgage, as alleged in the bill, and ordering a statement of account between the parties. From that decree this appeal is prosecuted, and a reversal insisted upon, mainly on the ground that the evidence is insufficient to sustain the finding and decree of the trial court.

The evidence is irreconcilably conflicting, and by no means satisfactory. A number of witnesses introduced on behalf of appellees testify to admissions and declarations by appellant, to the effect that the deed in question was made for the purpose alleged in the bill, and not intended by the parties as an absolute conveyance, and their evidence, uncontradicted, justifies the finding and decree. On the other hand, witnesses introduced by appellant swear to declarations made by William in his lifetime, to the effect that he had sold the lands to appellant, and which tend to disprove the theory of the bill and establish the defence. But one witness testifies to being present when the deed was made. Thomas Slemons swears that appellant told him, before he bought the land, he was going to do so, and says: "I went with him when the trade was made,—when the papers were drawn up. Berry (meaning appellant) paid him some money. They talked about papers, and Berry counted him down some money,—between $1500 and $2000." He also states that they talked about what had been done before that; that Berry had paid off some judgments and some costs, some lawyers fees, and other charges; that they were figuring on items that Berry had made as pay-

ments on the place; but he seems to be quite positive that a considerable sum of money was paid down by appellant at that time, and he says the deed was then made. This he thinks was about the middle of April, 1879. Forrest Hanks, a son of appellant, testified to a conversation between his father and William about this land. He swears that he heard his father say he had paid him $4000, and would pay him $2360 if he would deed him the place, and let him have two years rent if he would pay the mortgage. This conversation he says was in 1879.

This testimony, especially that of Slemons, while it tends to prove an absolute purchase of the land in question, is in conflict with the theory of the defence set up, which is in the answer, that the conveyance was in satisfaction of a past indebtedness, and not on account of anything paid at the time. Slemons' evidence is, that the deed was executed and acknowledged after night, but the deed itself shows that it was filed for record at four o'clock P. M. the same day it was made. It can not be said that there is not evidence in this record sufficient to support the decree, nor that it is so completely overcome by the evidence of appellant as to justify a court of review in setting aside the finding of the chancellor, more particularly when the record shows that he had the opportunity of seeing the witnesses and hearing them testify.

James Hanks, a witness for appellees, was asked, on cross-examination, if William did not tell him that he had sold the land in question to Berry, and the court sustained an objection thereto, evidently on the ground that it was not proper cross-examination. We think the ruling was correct. There was nothing in the evidence of the witness in chief to justify that question.

The decree must be affirmed.

*Decree affirmed.*